UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SPECIALTY MARKETING GROUP, INC. and NICHOLAS YEBBA, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-12636-LTS |
| STEVEN KATZ, CECILE KATZ a/k/a CECILE GIRAUD, CHOCOVINE, LLLP, CHOCOVINE ONE, LLC, CLEVER IMPORTS, LLC, and CLEVER HOUSE, LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS' MOTION TO DISMISS

May 30, 2014

SOROKIN, C.M.J.

Plaintiffs, Nicholas Yebba and his company Specialty Marketing, bring a series of state law claims against Steven Katz, his wife Cecile Katz (a/k/a Cecile Giraud), and a number of entities allegedly controlled by Mr. and Mrs. Katz. Diversity establishes the Court's jurisdiction.[1] This business dispute arises out of the marketing of Chocovine wine by Plaintiffs on behalf of various defendants. The claims center on the following: (1) an alleged contract in which Mr. Katz promised a payout to Plaintiffs of double the previous twelve months' commissions upon the sale of the Chocovine brand; (2) the alleged failure to pay Yebba $4,229 in wages owed for his last month of work for one of the entities; (3) Plaintiffs' efforts to impose

---

[1] Plaintiffs originally brought their claims in state court, and Defendants removed.

liability for the foregoing on all of the defendant entities; and (4) Plaintiffs' allegations that Mr. and Mrs. Katz and the various entities engaged in fraudulent conveyances to avoid paying the foregoing debts. For the following reasons, the Motion to Dismiss is ALLOWED IN PART AND DENIED IN PART.

I.  BACKGROUND

  *A. Facts*

The following facts are drawn from Plaintiffs' Attested Complaint (Docket #15-2).[2] Yebba is the Treasurer and Secretary of Specialty Marketing Group, Inc., a company in the business of brokering wines. Complaint ¶¶ 1, 3, 41. Chocovine is a trademark for a specific type of wine. Complaint ¶ 7. It was initially registered to Mr. and Mrs. Katz on August 26, 2008. Complaint ¶ 8.

In 2010, Mr. Katz attended the Wine and Spirit Wholesalers of America ("WSWA") conference on behalf of Mrs. Katz and himself. Complaint ¶¶ 38, 39. At this conference, Mr. Katz made a presentation to various brokers present, including Plaintiffs, stating that Mr. and Mrs. Katz would pay each broker a year's commission if the Chocovine Intellectual Property was transferred or sold by Mr. and Mrs. Katz to any new person or entity. Complaint ¶¶ 6, 41. After the conference, on April 18, 2010, Mr. Katz wrote an email on behalf of Mrs. Katz and himself, promising he would pay Specialty Marketing and/or Yebba twice their previous twelve months' commissions as a payout for their "quality time associated with the brand." Complaint ¶ 42, 43. The email reads:

  Subject: Future

  Hi Nick,

---

[2] In keeping with the standard of review applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(6), factual allegations are recited as if true. See Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 (1st Cir. 2005).

2

> As we previously discussed, if and when the Chocovine brand gets sold, we will take your previous twelve months commission and then double the amount as a payout for your quality time associated with the brand.
> We will follow this email with a signed letter.
> Regards,
> Steve

Affidavit at 7.[3] Prior to the WSWA conference and the April 18 email, Plaintiffs had spent significant time, money and effort in helping to develop and market Chocovine. Complaint ¶ 43.

In 2010, after the WSWA conference and the April 18, 2010 email, the entities Chocovine, LLLP and Chocovine One, LLC were formed. Complaint ¶¶ 9, 12. Mr. Katz is the Manager/Member of Chocovine One, LLC. Complaint ¶ 15. Plaintiffs believe Mr. and Mrs. Katz own both Chocovine entities. Complaint ¶¶ 10, 13. Shortly after Chocovine, LLLP was formed on September 3, 2010, Mr. and Mrs. Katz sold and/or transferred the ownership interest in the intellectual property of Chocovine to Chocovine, LLLP, without notice to the Plaintiffs. Complaint ¶¶ 9, 47. Plaintiffs believe that on April 2, 2012, Chocovine One, LLC, transferred some or all of its interest in the Chocovine trademark to Dekuyper/Team Products BVBA for two million dollars.[4] Complaint ¶ 16, 49. Since each of the assignments, transfers and/or sales, Plaintiffs have inquired about any transfers/sales and Mr. Katz has continuously denied to Plaintiffs that the transfers or sales occurred, and has failed or refused to pay the double commission payout upon sale. Complaint ¶¶ 50, 51.

On June 1, 2011, "Mr. Yebba of Specialty Marketing became employed by Clever Imports, LLC[,]" as its Vice President and Northeast Regional Manager with a

---

[3] Plaintiffs entered into the record an Affidavit in Support of Preliminary Injunction (Docket #15-3) and appended materials, which they had filed in the Massachusetts Superior Court of Norfolk County, where this action originated. The same submission was entered into the record by Defendants along with their notice of removal. Docket ##1, 4. The Complaint refers to and quotes from the April 18 e-mail, but does not contain the e-mail itself. Where the Complaint is expressly linked to the alleged e-mail, see Complaint ¶ 43, and the e-mail's authenticity is unchallenged, the Court may consider it on a motion to dismiss without converting the motion to one for summary judgment. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).
[4] Plaintiffs do not trace how Chocovine One, LLC came to own the Chocovine trademark.

"salary/commission" and additional benefits. Complaint ¶ 52. Mrs. Katz is the Manager/Member of Clever Imports, LLC. Complaint ¶ 56. Mr. and Mrs. Katz control Clever Imports, LLC. Complaint ¶ 55.

Mr. Katz terminated Yebba's employment with Clever Imports, LLC, as of May 20, 2013. Complaint ¶ 53. On May 20, 2013, Mr. Katz, on behalf of Clever Imports, LLC and himself, acknowledged in writing that Yebba was still entitled to receive pay for invoices for May 20, 2013. Complaint ¶ 54. At this time, Mr. and Mrs. Katz were responsible for payment decisions. Complaint ¶ 57.

On May 31, 2013, Yebba timely filed a Non-Payment of Wages and Workplace Complaint against Mr. and Mrs. Katz, Chocovine One, LLC, and Clever Imports, LLC, for the non-payment of wages in the amount of $4,229.21. Complaint ¶¶ 58, 59. On July 23, 2013, the Massachusetts Attorney General's Fair Labor Division issued authorization to Yebba for immediate private suit against Mr. and Mrs. Katz, Chocovine One, LLC, and Clever Imports, LLC. Complaint ¶ 60.

By letter dated May 28, 2013, Plaintiffs made demand on Mr. and Mrs. Katz and various Chocovine and Clever entities for commissions resulting from the transfer and/or sale of the Chocovine brand/Intellectual Property, and demanding that Defendants put a "legal hold" over their books and records. Complaint ¶¶ 61, 64.

On September 11, 2013, Plaintiffs filed their Complaint in the Massachusetts Superior Court of Norfolk County. Docket #3. Defendants timely filed for removal to this Court on October 18, 2013. Plaintiffs' fourteen-count Complaint addresses the Defendants collectively in three groups: (1) Mr. and Mrs. Katz; (2) Mr. and Mrs. Katz, Chocovine, LLLP, and Chocovine

One, LLC, comprising the Chocovine Defendants; and (3) Mr. and Mrs. Katz, Chocovine One, LLC, and Clever Imports, LLC, comprising the Clever Defendants. Complaint ¶¶ 68, 69.

Counts I through VI arise from the alleged agreement to a double commission payout upon the sale of the Chocovine brand. Counts VII through XI, against the Clever Defendants, arise from Clever Defendants' alleged failure to pay Plaintiffs $4,229 in earned wages. Plaintiffs also seek declaratory judgment (Count XII), the ability to pierce the corporate veil (Count XIII), and what amounts to a reach and apply request (Count XIV), should Plaintiffs prevail, based on Defendants' alleged fraudulent conveyances between and among themselves.

Defendants now seek dismissal under Fed. R. Civ. P. 12(b)(6) of: Counts I through VI; Counts VII through XI as to Plaintiff Specialty Marketing and as to Defendants Mr. Katz and Mrs. Katz;[5] Counts VII, VIII, and IX without prejudice as to Plaintiff Yebba; Count X; and Counts XIII and XIV without prejudice.

The parties were heard on Defendants' Motion to Dismiss on May 15, 2014.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc.,

---

[5] Defendants also seek to dismiss these counts as to Clever House, LLC. Despite naming Clever House, LLC as a party to this litigation, however, Plaintiffs did not include Clever House, LLC in any of the counts.

5

708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III. DISCUSSION

*A. Count I: Breach of Contract arising out of the alleged statements of a payout*

Plaintiffs lodge this claim only against Mr. and Mrs. Katz, Complaint at 9, notwithstanding some allegations in the Complaint to the contrary. See Complaint ¶¶ 74-75. Defendants argue that any statements made referring to a payout upon sale based on a year's commissions violate the Statute of Frauds, M.G.L. c. 259, § 1, for two reasons, both incorrect. First, the oral statements Mr. Katz allegedly made at the WSWA conference could not be

6

performed within one year of the making precisely because such a statement promises one year's worth of commissions. See M.G.L. c. 259, § 1 Fifth. Nothing about that language, however, requires or suggests that twelve months must elapse from the time of utterance, as a condition precedent to payment. For example, if no commissions had been paid in eleven of the twelve months, there would be nothing to double for those eleven months. Where time for performance is the issue, the Statute of Frauds "does not apply to contracts that might extend beyond a year, but can still be fully performed within a year." Coyle v. Kittredge Ins. Agency, Inc., No. 4:12-CV-40014-TSH, 2014 WL 1330859, at *2 (D. Mass. Mar. 28, 2014) (citing Doherty v. Doherty Ins. Agency, 878 F.2d 546, 551-52 (1st Cir. 1989)).

Second, Defendants argue that the April 18, 2010 email with stated terms promised a signed letter to follow which, Plaintiffs admit, never arrived. Citing to Simon v. Simon, 35 Mass. App. Ct. 705 (1994), for support, Defendants conclude that the email, standing alone, cannot have expressed the essential terms of a contract with sufficient certainty as to satisfy the Statute of Frauds. See 35 Mass. App. Ct. at 711. Simon, however, was scrutinized under the Statute of Frauds because it involved an agreement for a lease. See M.G.L. c. 259, § 1 Fourth. Here, a writing is not required by the Statute of Frauds. See M.G.L. c. 259, § 1.

Defendants also argue that Count I fails in that no contract was created because the alleged statements lacked completeness, definiteness, and the binding intentions of the parties. Docket #19 at 6-9. In particular, they say, (1) the email promised a signed letter to follow which never materialized, and (2) the terms in the email were too ambiguous and indeterminate. Docket #19 at 8. Defendants contend this establishes the parties never passed the stage of "imperfect negotiation." However, this is not the case in which "the participants visibly reserved their commitment for the later documents." See Targus Grp. Int'l, Inc. v. Sherman, 76 Mass.

7

App. Ct. 421, 429 (2010). All the email promised was a more formal memorialization of the terms. Furthermore, the terms are plain: "if and when the Chocovine brand gets sold, we will take your previous twelve months commission and then double the amount as a payout for your quality time associated with the brand." That the parties might dispute the application of these terms to the developments that occurred does not establish that the parties failed to reach agreement on the material terms. See Targus Grp. Int'l, Inc., 76 Mass. App. Ct. at 430 ("It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.").

This Count presents one further issue – whether it properly lies against Mrs. Katz. Drawing all reasonable inferences in favor of the Plaintiffs, as the Court must, Defendants' motion on this claim is denied as to both Mr. and Mrs. Katz. Plaintiffs do allege that both Mr. and Mrs. Katz owned the brand, Mr. Katz spoke at the convention "on behalf of himself and on behalf of Mrs. Katz," and the email stated, "*we* will take your previous twelve months commission . . ." and "*We* will follow this email with a signed letter." Complaint ¶¶ 39, 40; Affidavit at 7 (emphasis added). In these circumstances, Plaintiffs have established a plausible claim that Mr. Katz had authority to, and did, bind his wife in making the alleged contract.

B.  *Count II: Misrepresentation*[6]

Plaintiffs claim fraudulent misrepresentation arising out of the alleged promise to pay double the commissions upon sale of the brand and the subsequent refusal to pay. Complaint ¶ 81. This claim fails. Plaintiffs must allege all the elements of fraud with particularity under Fed. R. Civ. Proc. 9(b). Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004). Nowhere in the Complaint do Plaintiffs allege that Mr. Katz made the promise with knowledge

---

[6] Plaintiffs acknowledge that Count II was mislabeled as being against the Chocovine Defendants, but is against only Mr. and Mrs. Katz. Docket #28 at 11.

of its falsity or the intent, at the time he made the promise, to renege. See Masingill v. EMC Corp., 449 Mass. 532, 540 (2007) (elements of fraudulent misrepresentation are false representation of material fact with knowledge of falsity for purpose of inducing plaintiff to act thereon, where plaintiff relied on representation as true and acted upon it to his damage).

At the May 15 hearing, Plaintiffs offered another basis for the fraudulent misrepresentation claim – that Plaintiffs periodically checked with Mr. Katz about any transfers or sales, and Mr. Katz continuously denied any had occurred, even after alleged assignments had taken place. There is support for this in the factual allegations of the Complaint and in the submitted Affidavit which was not incorporated into the Complaint. Complaint ¶ 50;[7] Affidavit ¶ 9. Though ¶ 50 of the Complaint is incorporated by reference into Count II, the allegations in Count II specifically base the fraud claim solely on the promise to pay. Thus, the Court dismisses this claim with leave to amend in order to explicitly, and with particularity, plead the notice-related allegations as the basis for the fraudulent misrepresentation, and/or to properly plead with particularity Plaintiffs' original basis for the claim.

*C. Count III: Breach of the Covenant of Good Faith and Fair Dealing[8]*

Plaintiffs assert this claim against Mr. and Mrs. Katz, only. To succeed on this claim, Plaintiffs must show bad faith conduct on the part of Defendants which destroyed or damaged Plaintiffs' right to a benefit of a valid contract. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). Plaintiffs claim Defendants breached the covenant by "selling the Intellectual Property multiple times, . . . by failing and/or refusing to notify the Plaintiffs . . . and by failing and/or refusing after demand, or otherwise, to pay the Plaintiffs . . . ." Complaint ¶ 87.

---

[7] Paragraph 50 of the Complaint reads: "Since each of the assignments, transfers and/or sales have taken place, the Plaintiffs have questioned Mr. Katz regarding the transfer and/or sale of the Intellectual Property, which Mr. Katz continuously denied occurred."
[8] Plaintiffs acknowledge that Count III was mislabeled as being against the Chocovine Defendants, but is against only Mr. and Mrs. Katz. Docket #28 at 11.

The claim that Defendants failed or refused to notify Plaintiffs of a sale, is bolstered by ¶ 50 of the Complaint, which, as discussed in the previous count and incorporated into this count, alleges that Defendants falsely told Plaintiffs they had not sold the brand, thereby depriving Plaintiffs of their alleged benefit. A fair reading of this claim, then, alleges enough to satisfy the pleading requirements.

*D. Count IV: Unjust Enrichment and Count V: Quantum Meruit*

Plaintiffs assert these claims against the Chocovine Defendants. Plaintiffs allege that the Chocovine Defendants caused the Plaintiffs to provide marketing, promotion, and sales services to the Chocovine Defendants that they otherwise would not have performed, and as a result of nonpayment for these services, the Plaintiffs were "unjustly impoverished and the Chocovine Defendants unjustly enriched." Complaint ¶¶ 44, 51, 90-91. Thus, Plaintiffs have pleaded sufficient facts to make out the elements of unjust enrichment. See Andrews v. First Student, Inc., No. 10-11053-RGS, 2011 WL 3794046, at *5 (D. Mass. Aug. 26, 2011) (citing Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).

In Massachusetts, quantum meruit is a theory of recovery rather than a cause of action. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986). Therefore, the Court dismisses the quantum meruit claim while allowing the theory of recovery to proceed under the unjust enrichment claim. See Bunge Oils, Inc. v. M & F Mktg. Dev., LLC, No. 03-11559-GAO, 2005 WL 629489, at *3 (D. Mass. Mar. 15, 2005).

*E. Count VI: Violation of M.G.L. c. 93A, § 11*

Plaintiffs lodge this claim against the Chocovine Defendants (Mr. Katz, Mrs. Katz, and the Chocovine entities) on a theory of successor liability, alleging that the Chocovine entities are successors in interest to Mr. and Mrs. Katz. This is misplaced. Successor liability is a doctrine

10

which provides an exception to the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets. Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997). Mr. and Mrs. Katz are not a corporate entity and there has been no allegation that the Chocovine entities subsumed Mr. and Mrs. Katz or assumed their obligations. See Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 475 (2013).

As against Mr. and Mrs. Katz, a 93A claim may be based on a breach of the covenant of good faith and fair dealing. Anthony's Pier Four, Inc., 411 Mass. at 476; see also Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 140 (D. Mass. 2005) (breach of covenant involves bad faith and improper motive, supporting 93A claim). A 93A claim, however, may not be based on conclusory or threadbare assertions. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Thus, Plaintiffs' conclusory allegations, on information and belief, relating to fraudulent conveyances and the factors favoring piercing the corporate veil, Complaint ¶¶ 24-37, do not support a 93A claim against the Chocovine entities. See Gooley, 851 F.2d at 515. Where Plaintiffs have pleaded sufficiently a breach of the covenant of good faith and fair dealing, however, their 93A claim against Mr. and Mrs. Katz survives Defendants' motion to dismiss.[9]

### F. Counts VII through XI, and XIII: Breach of Contract and Related Claims Arising out of Unpaid Wages against the Clever Defendants

In June 2011, Clever Imports, LLC hired Mr. Yebba of Specialty Marketing to market the Chocovine brand wines. On May 20, 2013, Yebba was terminated. Now, he claims Clever Imports owes him $4,229 in unpaid wages for his last month of work. Plaintiffs have successfully stated a claim arising out of these facts for breach of contract (Count VII), unjust

---

[9] For the purposes of their § 11 claim, Plaintiffs do allege that Mr. and Mrs. Katz, as included in the Chocovine Defendants, engaged in commerce or trade. Complaint ¶ 99.

enrichment (Count IX),[10] and wage and hour violation pursuant to M.G.L. c. 149, § 148 (Count XI). Defendants' arguments to the contrary are meritless. Plaintiffs' claim for breach of the covenant of good faith and fair dealing (Count VIII) is coextensive with their breach of contract claim (Count VII), and thus, fails. See Anthony's Pier Four, Inc., 411 Mass. at 471. For the reasons stated in the Count V discussion, the Court dismisses the quantum meruit claim (Count X) while allowing the theory of recovery to proceed under the unjust enrichment claim (Count IX). See Bunge Oils, Inc., 2005 WL 629489, at *3.

Plaintiffs concede that "technically" Yebba had a contract with Clever Imports, LLC.[11] Docket #28 at 21. Nonetheless, Yebba and Specialty Marketing lodge all the wage-related claims against the following additional defendants - Mr. Katz, Mrs. Katz, and Chocovine One, LLC – contending either that they are all "jointly and severally liable" or that Plaintiffs can pierce the corporate veil to reach these other defendants. The Complaint alleges that Mr. and Mrs. Katz control Clever Imports, LLC, Mr. and Mrs. Katz were responsible for payment decisions at the relevant time, and Mrs. Katz is the Manager/Member of Clever Imports, LLC. Complaint ¶¶ 55-57. A manager of an LLC may be held liable for violations of M.G.L. c. 149, § 148. Cook v. Patient Edu, LLC, 465 Mass. 548, 552-53 (2013). Thus, Plaintiffs have sufficiently pleaded Count XI against Clever Imports, LLC, and Mrs. Katz.

Plaintiffs allege, in Count XIII, a standalone pierce the corporate veil claim. Under Massachusetts law, piercing does not state a separate cause of action. Kraft Power Corp. v. Merrill, 464 Mass. 145, 148 (2013). Accordingly, the Court dismisses Count XII. Furthermore,

---

[10] Plaintiffs allege that they conferred a benefit on the Clever Defendants, Mr. and Mrs. Katz, Chocovine One, LLC, and Clever Imports, LLC, and provided those benefits without payment. Complaint ¶¶ 54, 57, 114, 115. A claim for unjust enrichment is available only where there is no adequate remedy at law. Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005). Thus, Plaintiffs' pleading in the alternative is sufficient as against all the Clever defendants.
[11] Plaintiffs' Complaint alleges that it was "Yebba of Specialty Marketing" who was employed by Clever Imports. Complaint ¶ 52.

Plaintiffs have alleged the need to pierce only through a conclusory recitation of the relevant factors, and only on "information and belief." Complaint ¶¶ 26-37. This is insufficient to demonstrate the need to pierce. Omni-Wave Elecs. Corp. v. Marshall Indus., 127 F.R.D. 644, 647-48 (D. Mass. 1989).

Here, the only way to hold Mr. and Mrs. Katz, and Chocovine One, LLC responsible for Clever Import, LLC's alleged contract and wage obligations to Plaintiffs is to pierce the corporate veil. Therefore, the Court dismisses Count VII against Mr. Katz, Mrs. Katz, and Chocovine One, LLC, without prejudice so that Plaintiffs may amend their complaint should discovery provide support for piercing. Count XI is dismissed without prejudice as to Mr. Katz and Chocovine One, LLC for the same purpose.

*G. Count XIV: Fraudulent Conveyance*

Plaintiffs attempt to support this claim with conclusory allegations resting upon information and belief.[12] Complaint ¶¶ 24-26. While Plaintiffs may plead fraudulent conveyance upon information and belief where facts of alleged fraud "are peculiarly within the perpetrator's knowledge[,]" they must still provide supporting facts and not mere conclusions. See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig., 618 F. Supp. 2d 96, 107-08 (D. Mass. 2009) (quoting Gublo v. NovaCare, Inc., 62 F. Supp. 2d 347, 356 (D. Mass. 1999)). Plaintiffs have not pleaded this claim sufficiently.

IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Docket #19) is ALLOWED IN PART AND DENIED IN PART. Specifically, Defendants' Motion to Dismiss is:

1. DENIED as to Count I against Mr. Katz and Mrs. Katz;

---

[12] In particular, paragraph 25 of the Complaint states, "Upon information and belief, the Defendants have transferred and/or sold assets between and among themselves to forestall creditors, which such transferring and sale of assets between the various Defendants was done with the intent to hinder then known and future creditors."

13

2. ALLOWED with leave to amend Plaintiffs' Complaint as to Count II against Mr. Katz and Mrs. Katz;
3. DENIED as to Count III against Mr. Katz and Mrs. Katz;
4. DENIED as to Count IV against all Chocovine Defendants;
5. ALLOWED as to Count V against all Chocovine Defendants, while allowing the quantum meruit theory of recovery to proceed under the unjust enrichment claim;
6. ALLOWED as to Chocovine, LLLP and Chocovine One, LLC, and DENIED as to Mr. Katz and Mrs. Katz, with respect to Count VI ;
7. ALLOWED as to Count VII without prejudice with respect to Mr. Katz, Mrs. Katz, and Chocovine One, LLC and DENIED as to Clever Imports, LLC;
8. ALLOWED as to Count VIII;
9. DENIED as to Count IX;
10. ALLOWED as to Count X against all Clever Defendants, while allowing the quantum meruit theory of recovery to proceed under the unjust enrichment claim;
11. ALLOWED as to Count XI without prejudice with respect to Mr. Katz and Chocovine One, LLC and DENIED as to Mrs. Katz and Clever Imports, LLC;
12. ALLOWED as to Count XIII; and
13. ALLOWED as to Count XIV.

Plaintiffs have ten days to file an amended complaint, and Defendants shall have ten days thereafter to respond. The Court will hold a Rule 16 conference on July 7, 2014.

  /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge